G. A. WATERMAN, Appellee, v. FRED E. WOOD, Appellant.

**VENDOR AND PURCHASER:** Presumptions—Possession—Evidence 1 —Burden of Proof. In the absence of other showing, the right to possession is in the holder of the legal title, and the burden of showing a superior right thereto is upon the party asserting it.

**VENDOR AND PURCHASER:** Possession—No Right until Purchaser 2 chaser Acquires Title. A mere contract to sell and convey land at a future date confers no right of possession until the purchaser has acquired title in himself.

**VENDOR AND PURCHASER:** Possession—Consent of Vendor to 3 Possession before Passing of Title. While, prior to the passing of title under contract not providing for possession, purchaser could not, without the consent of the vendor, acquire the right of possession, yet if, after making the initial payment, and before

the delivery of deed, the vendor consents to the purchaser's entering into possession, the purchaser could rightfully hold such possession, pending the delivery of the deed or final adjudication of his rights.

PRINCIPAL AND AGENT: Powers of Agent—No Ratification Without Knowledge. To bind the owner of property by acts of agent in letting purchaser into possession, after an initial payment, but before delivery of deed, it must appear that the agent had authority from the owner; and, in the absence of knowledge on the part of the owner that the agent had so assumed to act in his behalf, there could be no ratification.

FORCIBLE ENTRY AND DETAINER: Right of Action—Against One Claiming Possession as Purchaser. The action of forcible entry and detainer will lie against one claiming possession, if he is unlawfully in possession.

FORCIBLE ENTRY AND DETAINER: Right of Action—Tenant at Will. A person who takes wrongful possession of property may become a tenant at will by being permitted to remain there 30 days or more, making it necessary to terminate his tenancy by statutory notice; but, his tenancy being so terminated, he is liable to eviction by summary proceedings.

APPEAL AND ERROR: Briefs—Improper Matter—Counsel Criticised. Conduct of counsel, in presenting immaterial matter, and in making vicious attack upon trial judge, in his brief, censured and criticised.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHINSON, Judge.

MARCH 21, 1919.

ACTION to recover possession of a house and lot in the city of Le Mars. There was a trial to the court, a judgment for the plaintiff as prayed, and defendant appeals.— *Affirmed.*

*T. M. Zink,* for appellant.

*Nelson Miller,* for appellee.

WEAVER, J.—To a considerable extent, the facts are

not in dispute. George E. Richardson was a real estate agent in Le Mars, and had in his employment one A. L. Bowers. The plaintiff, Waterman, owned a house and lot in Le Mars, but, at the inception of the deal now in controversy, he was living in another state. The defendant, Wood, was a resident of Le Mars, and desired to purchase plaintiff's property, above mentioned. There was some talk or negotiation between the defendant and Bowers about the purchase of the property; but whether Bowers and his employer, Richardson, or either of them, was, at that time, the authorized agent of the plaintiff is a matter on which witnesses are not entirely agreed. Bowers testifies that he was first approached by defendant, who wished to know if he (Bowers) could get the property for him, and said he would pay $1,500 for it, but would not pay any commission. Being then asked if he would object to Richardson and Bowers' getting a commission from Waterman, he answered in the negative. Thereupon, Richardson took up the matter with plaintiff by letter, and sought to arrange with him for a sale to Wood upon the terms of his offer. Plaintiff finally agreed to allow the sale to be made, but at first refused to pay a commission. Later, he consented to pay a commission of $50. On receipt of defendant's letter to the foregoing effect, Bowers received from the defendant a first payment of $100, and delivered to him a receipt as follows:

"Le Mars, Iowa, Feb. 22, 1916.

"Received of Fred Wood certificate of deposit for One Hundred Dollars endorsed as first payment on the purchase of the G. A. Waterman property, being the north sixty-five feet of Lots Seven and Eight in Block Two of South Side Addition to Le Mars, Iowa; the consideration being fifteen hundred dollars; balance of which is to be paid upon delivery of deed and abstract showing perfect title.

"Geo. E. Richardson, by A. L. Bowers."

On notice of this arrangement, plaintiff and wife made out a warranty deed of the property to defendant, dated March 6, 1916, and forwarded it to a bank at Le Mars, to be delivered on payment of the stipulated price. This deed excepted from its warranty any "liens which are or might be assessed against this property for paving or sewer." It further appears that, about the time the agreement was made between defendant and Bowers, the city council had begun proceedings for the pavement of the street in front of this property; but apparently, neither plaintiff nor defendant then knew or understood that the property had become subject to a lien for the special assessment to be levied for that purpose, though Bowers testified (and defendant denies) that the subject was mentioned, and it was orally agreed that the defendant should assume its payment. When the defendant went to the bank to make payment for the property, and found that the abstract of title tendered with the deed showed a lien for such special assessment, he demanded its removal or payment, as a condition precedent to his acceptance of the deed. He then deposited the full amount with the bank, with the receipt which had been given him by Bowers, instructing the bank to pay it over when the conditions named in the receipt were complied with. The dispute thus arising was continued by correspondence and by some ineffectual attempts at a compromise, covering a period of several months, until, at some stage of the controversy, before this suit was begun, plaintiff withdrew his deed from the bank, and refused to proceed further with the deal. The money deposited by the defendant still remains in the bank.

We now turn to facts more immediately connected with the possession of the property. When these negotiations were begun, the house and lot were occupied by a tenant of the plaintiff's, one Jones. On March 1, 1916, after the initial payment of $100 by the defendant, but before plain-

tiff had deposited the deed in the bank, defendant, who was then occupying other leased premises, arranged with Jones to permit him to go into possession of the Waterman house and lot, and for Jones to occupy the place which defendant vacated. By what authority defendant thus assumed possession of the property before he acquired title thereto, the record is quite obscure. As a witness, defendant says:

"I moved into this property March 1, 1916. I had to give possession of the house I was in, March 1, 1916, and Mr. Jones could rent it; so I went to Mr. Bowers and asked him if he couldn't make some arrangement so as to trade houses with Jones, as Jones wanted to move into the house I was in; and Mr. Bowers made the arrangement. Mr. Bowers was not working for me, and I did not employ him to do any work for me in this matter."

On the other hand, Bowers says:

"Mr. Wood talked with me about moving into the property, and asked if I could give him possession, and I told him I could not. He asked me if I would see the tenant, Jones, and see what he would say about moving out, and I told him I would, and did. I cannot say how Wood came to move into the property, as that is all I had to do with it."

There is no evidence whatever that either Bowers or Richardson had been given any power or authority to transfer the possession to defendant before the transfer of title. On the contrary, the correspondence which followed between plaintiff and Richardson shows that plaintiff declared that defendant had entered into occupancy of the premises without authority or right, and insisted that Richardson proceed to dispossess him, if he failed to pay the purchase price and take the deed tendered to him. On March 8, 1917, plaintiff served defendant with a 30-day notice to vacate the premises, and on April 10, 1917, defendant being still in possession, plaintiff served him with a further written notice to quit the same within three days. Defendant

having refused to comply with said notice, plaintiff brought action against him in forcible entry and detainer before a justice of the peace, by filing a petition with the justice, setting forth his claim of title and defendant's alleged wrongful possession, and demanding his ouster therefrom. The defendant answered, alleging that he himself was "the absolute owner in fee simple" of the described property, and stating his version of the facts. Plaintiff then replied, denying the answer; and the justice of the peace, finding that an issue of title had been raised, certified the case to the district court for trial.

The foregoing statement embodies all the facts and testimony which are material to a determination of the appeal.

I. With these facts in mind, little discussion is needed upon the law governing the rights of the parties, so far as they are involved in the issues presented. The question to be decided is the right to the possession of the house and lot. The question of title is important only so far as it bears upon the right of possession. While defendant pleads in his answer that he is the absolute owner of the fee of the property in dispute, it is conclusively shown that plaintiff still holds the legal title; and, if defendant is entitled to the possession, it must be because the possession he defends was acquired with plaintiff's consent, or by some contract therefor with him. In the absence of other showing, the right to the possession of land is in the holder of the legal title, and the burden of showing a superior right thereto is upon the party who asserts it. A mere contract or agreement, written or oral, to sell and convey at a future date, confers no right of possession upon the purchaser until the conveyance is complete: that is, until the purchaser has acquired title in himself. If

1. VENDOR AND PURCHASER: presumptions: possession: evidence: burden of proof.

2. VENDOR AND PURCHASER: possession: no right until purchaser acquires title.

is, of course, competent for the parties to agree upon a delivery of possession before consummation of the deal by delivery of deed. Defendant in this case bottoms his claim to be a purchaser upon the written contract or receipt signed by Bowers in the name of Richardson. He insists that this paper embodies all the conditions of his purchase, and that nothing was omitted therefrom by oversight or mistake. As-

**3. VENDOR AND PURCHASER: possession: consent of vendor to possession before passing of title.**

suming this to be correct, for the purposes of this case, it contains no provision or hint or suggestion that either party contemplated a delivery of possession until the purchase price was paid and title passed. Recognizing this situation, appellant claims and argues that, after the written receipt was delivered, and before appellee, who was then in a distant state, had made and forwarded the deed to the bank at Le Mars, plaintiff, by the act of Bowers or Richardson as his agent, did consent to his entering into the possession, and, such entry being lawful, and his tender of payment of the purchase price being sufficient, his possession cannot be made unlawful by plaintiff's refusal to deliver the deed according to the contract. If the record could fairly be said to establish these alleged facts, the defense would be perfect, and defendant could rightfully hold the possession so acquired, pending the delivery of the deed or the final adjudication of his right to such conveyance. But such is not the showing, and we find there is an entire failure of proof in support of this affirmative defense. There is no evidence that either Richardson or Bowers was the plaintiff's agent, having any authority with reference to this property, prior to the inception of the correspondence between Richardson and plaintiff concerning a sale to defendant. That correspondence would, however, sustain a finding that Richardson did then become plaintiff's agent for the sale of the property to defendant for the sum of $1,500,

and it was in pursuance of this authority that Richardson, by Bowers, made the contract to sell and convey, as indicated in the receipt which we have already quoted in full. There is nothing in all the correspondence between plaintiff and Richardson, or plaintiff and the bank, which tends in the slightest degree to show authority in either Richardson or Bowers to control the possession of the property, pending the consummation of the deal, or to permit plaintiff to assume the possession before he acquired the title. On the contrary, the whole drift and import of plaintiff's letters strengthens and supports his assertion that he never gave such authority to anyone, it being his constant contention that defendant's possession was wrongful. If, finding him in possession, plaintiff refrained from beginning proceedings for his eviction, pending a possible settlement or adjustment of the dispute over the liability for the paving tax, and delay for more than 30 days might operate, under our statute, to convert the tenant's holding into a tenancy at will, still it could not make the original entry otherwise than wrongful, or destroy plaintiff's right, on failure of negotiations for a settlement, to terminate the tenancy at will by proper notice. Defendant's sole reliance for his right to take possession is upon the evidence that he asked Bowers to see the tenant, Jones, and arrange with him for the change, and that Bowers did so. All this may be admitted, but it proves nothing. To bind plaintiff by Bowers'

**4. PRINCIPAL AND AGENT: powers of agent: no ratification without knowledge.** act, it must appear, expressly or by fair inference, that Bowers had authority therefor from plaintiff. For this conclusion there is no support in the record, and counsel's claim that there is evidence of a ratification by the plaintiff is equally unfounded. There is no evidence whatever that plaintiff knew or was ever informed that Bowers had assumed to so act in his behalf, and in the absence of such knowledge or notice, there could be no rat-

ification. It follows from what we have said that the trial court reached the right conclusion, and that its judgment should be affirmed.

II. The plaintiff filed a pleading in the district court, asking that the contract or receipt to which we have referred be reformed, to show that defendant assumed the payment of the paving tax; and the court in its decree found for the plaintiff on that issue, and ordered that the writing be so reformed. We are disposed to the view that, without regard to such reformation, plaintiff was entitled to the possession of the property, and for that reason, we have not discussed the merits of the dispute over the terms of the agreement in this respect. In our judgment, however, the evidence tends to show that, when the agreement was made, the fact that paving was contemplated was known and was discussed by the parties; but neither of them knew or supposed that proceedings had reached the point where the tax for such improvement had become a lien, and the deal was made on the supposition by both parties that the burden of such charge, when finally assessed, would fall upon the purchaser. It was only when the abstract of title tendered by plaintiff disclosed a lien already existing that defendant raised the objection that, under the agreement to give him a "perfect title," this lien should be removed by plaintiff. In other words, we find that the agreement was made upon the assumption that this tax was not a lien, and that the prospective burden of it would be borne by the defendant, and such being the case, the defendant suffers no wrong or prejudice by the reformation ordered by the trial court.

III. It is the theory of the appellant that, as he is claiming to hold possession as a purchaser, the action of forcible entry and detainer will not lie. The objection is

without merit. A contract for the purchase

**5. FORCIBLE ENTRY AND DETAINER: right of action: against one claiming possession as purchaser.** of land, as we have seen, does not necessarily confer right of possession before conveyance; and, if a purchaser under a contract which does not provide for possession wrongfully assumes it, his contract does not make him immune against the remedies which would be appropriate against any other intruder. Again, as we have suggested in a preceding paragraph, one who takes wrongful possession may become a tenant

**6. FORCIBLE ENTRY AND DETAINER: right of action: tenant at will.** at will, by reason of being permitted to remain therein 30 days or more, making it necessary for the owner to terminate such tenancy by the statutory notice. But, his tenancy being so terminated, his holding again becomes wrongful, and he is liable to eviction by summary proceedings. None of the authorities cited by appellant announce any rule or principle inconsistent with those which we have here applied.

IV. During the trial below, there was an unfortunate clash between the court and counsel for defendant, with reference to the admissibility of certain evidence and the

**7. APPEAL AND ERROR: briefs: improper matter: counsel criticised.** persistence of counsel in making a record of certain objections which the court seemed to think had already been sufficiently noted. The interchange of heated remarks culminated in an order temporarily excluding counsel from the court room. Later, counsel returned; and, the court having announced its finding for the plaintiff, counsel then complained that he had not been given proper opportunity to argue the case, and thereupon, the record of what occurred proceeds as follows:

"The Court: Well, the case is decided. Mr. Zink: I don't know why this court has nothing to do but fight me. I have tried to treat you decently and fairly. I have not said a word in the trial of this case to which any court

could take any exception. You have ranted at me— The Court: That is all, Mr. Zink, that is all. The court will not listen to your lecture at this time. Mr. Zink: Well, you will listen at some other time,—you will have to listen. The Court: We are ready for the next case."

The darkly hinted-at "some other time," contained in the foregoing remark, seems to have had reference to the opportunity which an appeal to this court might afford to even up the account between counsel and court; for the brief of the former is liberally besprinkled with terms of gross disrespect to the trial court. The brief repeatedly refers to the trial court as "Hutchinson;" describes the court's findings of fact as "absurd and untruthful;" quotes the court's language, characterizing it as "ape-like reasoning;" and says that "shallower logic could not blow from an empty skull;" and declares that counsel "entertains such supreme contempt for Hutchinson it is awkward to credit him with such merit as he is entitled to."

The record showing the occurrence in the trial below, to which we have referred, has been preserved and brought to this court by the appellant himself, and counsel's vicious attacks upon the trial judge have been given frequent and prominent place in his brief; and, while they are wholly irrelevant to the merits of the case, we must assume that appellant desires us to give them some attention.

Courts are not immune against error, nor have we yet discovered any such saving quality in members of the profession, a part of whose inalienable privileges is the right to preserve and argue exceptions to adverse rulings. As a rule, members of the bar are self-respecting, fearless, and independent men, who know their rights and the rights of their clients, and how to protect themselves and their clients against the effect of erroneous adverse rulings, without indulging in gross disrespect to the court or scurrilous

abuse of the man who happens to occupy the bench; but unhappily, as this case demonstrates, there are exceptions. It is perhaps too much to expect of human nature that every vigorously contested case shall be tried without an occasional display of irritation on part of either court or counsel; but it is to the credit of the profession that few cherish resentments thus aroused, and fewer still so far forget what is due to their own dignity and standing (to say nothing of what is due to the court) as to proceed deliberately, when "the blood has had time to cool and reason to resume its sway," to place upon the permanent records of the court of which they are officers, the evidence of their malignant ill will. For such an act, there can be no justification, and we greatly regret that counsel should permit himself to assume such an attitude. As a sane man, and lawyer of long experience, he knows that, in passing upon the merits of his client's appeal, this court cannot permit, much less give the effect of argument, to his coarse vilification of the trial judge, whose fault, if any, in so far as disclosed by this record, was his failure to resort to more drastic measures.

The appellee has refrained from any attempt to compete with opposing counsel in bandying words of abuse, and has entirely ignored that feature of appellant's brief. We also should pass it without notice, were it not that our silence might be taken as a precedent encouraging repetition of such offenses, against all the rules of propriety which are supposed to govern the conduct of reputable members of the bar in their relations to the courts in which they are allowed to practice. Such conduct cannot and will not be tolerated.

The merits of the case are clearly with the plaintiff, and the judgment below is, therefore, affirmed, with costs.— *Affirmed.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.